C
Thompson v. Veach
C.A.7 (Ill.),2007.
Only the Westlaw citation is currently available.
United States Court of Appeals,Seventh Circuit.
Joseph THOMPSON, Petitioner-Appellant,
v.
Rick V. VEACH, Warden, Respondent-Appellee.
**No. 06-2141.**

Argued May 23, 2007.
Decided Sept. 7, 2007.

**Background:** Inmate filed habeas corpus petition challenging procedures used by the United States Parole Commission (USPC) in rescinding his parole date and continuing his case. The United States District Court for the Central District of Illinois, Joe Billy McDade, J., denied the petition and inmate appealed.

**Holdings:** The Court of Appeals, Bauer, Circuit Judge, held that:

(1) District of Columbia parole regulation created no due process liberty interest in parole, and

(2) decision to rescind inmate's parole date by at least 36 months was not arbitrary.

Affirmed.

**[1] Pardon and Parole 284 ⚿62**

284 Pardon and Parole
284II Parole
284k57 Proceedings
284k62 k. Review. Most Cited Cases
The authority of the Court of Appeals to review parole decisions by the United States Parole Commission (USPC) is limited to determining whether the decision constitutes an abuse of discretion; a court of review need only determine whether there is a rational basis in the record for the USPC's conclusions embodied in its statement of reasons.

**[2] Constitutional Law 92 ⚿3869**

92 Constitutional Law
92XXVII Due Process
92XXVII(B) Protections Provided and Deprivations Prohibited in General
92k3868 Rights, Interests, Benefits, or Privileges Involved in General
92k3869 k. In General. Most Cited Cases
In order for due process protections to apply, there must be a protectible liberty or property interest. U.S.C.A. Const.Amend. 14.

**[3] Pardon and Parole 284 ⚿46**

284 Pardon and Parole
284II Parole
284k45 Authority or Duty to Grant Parole or Parole Consideration
284k46 k. Parole as Right or Privilege. Most Cited Cases
There is no constitutional or inherent right for a convicted person to be conditionally released before expiration of a valid sentence.

**[4] Pardon and Parole 284 ⚿46**

284 Pardon and Parole
284II Parole
284k45 Authority or Duty to Grant Parole or Parole Consideration
284k46 k. Parole as Right or Privilege. Most Cited Cases
A valid conviction constitutionally extinguishes the prisoner's right to liberty for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the duration of his sentence. U.S.C.A. Const.Amend. 14.

**[5] Pardon and Parole 284 ⚷46**

284 Pardon and Parole
284II Parole
284k45 Authority or Duty to Grant Parole or Parole Consideration
284k46 k. Parole as Right or Privilege. Most Cited Cases

A state may create a protected liberty interest in parole by enacting provisions governing parole that give a prisoner a reasonable expectation that he will be released if certain criteria are met. U.S.C.A. Const.Amend. 14.

**[6] Constitutional Law 92 ⚷4838**

92 Constitutional Law
92XXVII Due Process
92XXVII(H) Criminal Law
92XXVII(H)12 Other Particular Issues and Applications
92k4838 k. Parole. Most Cited Cases

**Pardon and Parole 284 ⚷46**

284 Pardon and Parole
284II Parole
284k45 Authority or Duty to Grant Parole or Parole Consideration
284k46 k. Parole as Right or Privilege. Most Cited Cases

District of Columbia parole regulation stating that the Board of Parole may authorize release on parole on certain conditions created no due process liberty interest in parole. U.S.C.A. Const.Amend. 14; D.C.Code § 24-404(a).

District of Columbia parole regulation stating that the Board of Parole may authorize release on parole on certain conditions created no due process liberty interest in parole. U.S.C.A. Const.Amend. 14; D.C.Code § 24-404(a).

**[7] Pardon and Parole 284 ⚷63**

284 Pardon and Parole
284II Parole
284k63 k. Rescission or Retardation of Unexecuted Parole. Most Cited Cases

United States Parole Commission's decision to rescind inmate's parole date by at least 36 months was not arbitrary, and thus did not violate inmate's due process rights; inmate was deemed to be a more serious risk than his salient factor score (SFS) because of his threatening behavior towards female coworkers and his persistent failures on probation and parole. U.S.C.A. Const.Amends. 5, 14.

Appeal from the United States District Court for the Central District of Illinois. No. 05 C 1267-Joe Billy McDade, Judge.

Song K. Cheng, Mayer, Brown, Rowe & Maw, Chicago, IL, for Petitioner-Appellant.
Thomas A. Keith, Office of the United States Attorney, Peoria, IL, Joseph H. Hartzler, Office of the United States Attorney, Springfield, IL, for Respondent-Appellee.

Before EASTERBROOK, Chief Judge, and BAUER and MANION, Circuit Judges.
BAUER, Circuit Judge.

***1** Joseph Thompson appeals the district court's decision denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. After Thompson threatened his co-workers while participating in a work release program, the United States Parole Commission ("USPC") rescinded Thompson's February 26, 2005 presumptive parole date and continued his case to June of 2008. Thompson argues that the USPC violated his rights in rescinding his parole by failing to provide him with a statement of reasons that satisfies

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the requirements of the Due Process Clause of the Fourteenth Amendment. Because we find that Thompson has no liberty interest in his parole, we affirm the denial of his petition.

## I. Background

In 1999, Thompson was convicted in the District of Columbia of attempted possession with intent to distribute cocaine and sentenced to a term of three to nine years' imprisonment. The USPC provided Thompson with a parole hearing in 2002 and later granted him a presumptive parole date of February 20, 2004.[FN1] Prior to his parole date, Thompson was assigned to a halfway house. On January 31, 2004, Thompson left the halfway house and did not return for six days. As a result of this behavior, the USPC rescinded Thompson's February 20, 2004 parole date and re-set it to February 26, 2005.

On January 5, 2005, Thompson was transferred to Benton County Jail in Foley, Minnesota where he participated in a work release program as an employee for the Dombrovski Meats Company. Ten days prior to his scheduled parole, Thompson was fired from Dombrovski Meats. Thompson's work supervisor contacted Mary Herman, the work release program coordinator at the Benton County Jail, and told her that Thompson was fired for making inappropriate remarks and threatening statements to his female co-workers. Dombrovski Meats also sent Herman an incident report, which detailed Thompson's behavior. The report states that Thompson told two of his female co-workers that he "could have them" and that he "could take care of their boyfriend or husband."When the co-workers asked Thompson to explain these statements, he told them that he does none of the work himself, he "has connections", and "it will only take a phone call."The report further states that Thompson told another female co-worker, "You are at seven.... You have [until] ten."When asked to clarify his "seven-ten" comment, Thompson replied, "[A]t seven you get hurt real bad and at ten you get killed."Thompson's learning curve appears to be a flat line.

On February 23, 2005, the Federal Bureau of Prisons filed an incident report against Thompson, charging him with "threatening another with bodily harm" in violation of Bureau of Prisons ("B.O.P.") Code 203. At Thompson's hearing before the Center Disciplinary Committee ("CDC") the next day, Thompson denied making any threatening statements to his co-workers. The CDC found that Thompson had committed the acts as charged. A discipline hearing officer concurred with the CDC's findings and recommended that Thompson's parole be delayed by 30 days.

***2** On February 25, 2005, the day before Thompson's presumptive parole date, the Federal Bureau of Prisons notified the USPC that Thompson had violated B.O.P.Code 203. The USPC delayed Thompson's February 26 parole date pursuant to 28 C.F.R. § 2.86 and scheduled a rescission hearing for June 29, 2005. At the rescission hearing, Thompson claimed that the problems at his workplace were due to ethnic differences between himself and his co-workers. The hearing examiner found Thompson's co-workers' statements to be more credible and convincing than Thompson's denial and found that Thompson had violated B.O.P.Code 203 by threatening another with bodily harm.

The hearing examiner then calculated the amount of time that Thompson's parole should be extended pursuant to the rescission guidelines. The USPC has formulated guidelines, codified at 28 C.F.R. § 2.80, to

facilitate parole decisions for D.C.Code offenders. Under the guidelines, the examiner must determine the severity of the prisoner's offense and the prisoner's Salient Factor Score ("SFS"), which is a predictor of a prisoner's likely success on parole. Thompson's hearing examiner determined that his behavior constituted new criminal conduct committed in the community. The examiner rated the behavior as Category One offense the lowest (most severe) of the eight categories of offense severity-because it involved threatening bodily harm. The examiner calculated Thompson's SFS to be 3, indicating that Thompson's likelihood of success on parole was "poor." Based on these determinations, the examiner found Thompson's parole guidelines range to be 12 to 16 months and recommended a 16-month postponement of Thompson's parole. A second examiner subsequently reviewed the case and found that Thompson's SFS was 1 and not 3.[FN2] Because this revision did not change the classification of Thompson's likelihood of success on parole to a level other than "poor," the second examiner agreed with the first examiner's parole recommendation.

Following the hearing examiners' review, four USPC commissioners reviewed Thompson's case. One commissioner agreed with the rescission hearing examiners' recommendations. However, three Commissioners rejected the examiners' proposed 16-month sanction and recommended that the USPC continue Thompson's parole consideration to a rehearing on June 30, 2008 (36 months from Thompson's June 29, 2005 rescission hearing). Under the Code of Federal Regulations, the USPC "shall render a decision granting or denying parole, and shall provide the prisoner with a notice of action that includes an explanation of the reasons for the decision."See 28 C.F.R. § 2.74. On December 1, 2005, the USPC did just that. It denied Thompson parole and ordered a rehearing regarding Thompson's parole in June of 2008. In its notice to Thompson, the USPC specified the following reasons for its decision:

You committed behavior that constitutes new criminal conduct in the community while on work release from a community corrections center, which is rated as Category One severity because it involved threatening bodily harm.

*3 After consideration of all relevant factors and information presented, a decision above the guidelines is warranted because you are a more serious risk and poorer risk than indicated by your Salient Factor Score in that you have 12 convictions in 15 years, not including your juvenile record. You have previously failed in probation and failed on parole. Now while in a halfway house, you threatened female co-workers.

On September 12, 2005, Thompson filed a petition for writ of habeas corpus in district court, challenging the USPC's decision to rescind his parole date. The district court denied the petition, finding that (1) the USPC did not abuse its discretion by rescinding Thompson's February 26, 2005 presumptive parole date because Thompson was not paroled at the time of the rescission hearing; (2) the CDC's finding that Thompson violated B.O.P.Code 203 did not violate his due process rights; (3) the USPC did not violate Thompson's due process rights by relying on the CDC's findings of fact; and (4) the USPC did not abuse its discretion "by deciding to rescind Thompson's parole by 16 months."[FN3]Thompson then filed this timely appeal.

## II. Analysis

[1] On appeal, Thompson argues that the

USPC violated his due process rights by failing to provide him with a statement of reasons for denying his parole that either satisfies the requirements of the Due Process Clause or is statutorily sufficient. Thompson contends that the statement of reasons is insufficient because it fails to specify which local, state, or federal criminal offense that he had committed. Our authority to review USPC parole decisions is limited to determining whether the decision constitutes an abuse of discretion. *Solomon v. Elsea,* 676 F.2d 282, 290 (7th Cir.1982). A court of review need only determine whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons. *Id.* (Citations omitted).

[2][3][4][5] In order for due process protections to apply, there must be a protectible liberty or property interest. *Id.* at 284 (*citing Averhart v. Tutsie,* 618 F.2d 479, 480 (7th Cir.1980)).“There is no constitutional or inherent right for a convicted person to be conditionally released before expiration of a valid sentence.”*Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). A valid conviction constitutionally extinguishes the prisoner's right to liberty for the duration of his sentence. *Id.* (citing *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)). However, a state may create a protected liberty interest in parole by enacting provisions governing parole that give a prisoner a reasonable expectation that he will be released if certain criteria are met. *See Heidelberg v. Illinois Prisoner Review Bd.,* 163 F.3d 1025, 1026 (7th Cir.1998) (citing *Greenholtz,* 442 U.S. at 12;*Board of Pardons v. Allen,* 482 U.S. 369, 376, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987)).

***4** In *Greenholtz,* the United States Supreme Court reviewed Nebraska's state parole statute to determine whether it created a protectible liberty interest in parole. Nebraska's parole statute provides that “[w]henever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it *shall* order his release unless it is of the opinion that his release should be deferred because [one of four specifically designated reasons are found].”*See*NEB.REV.STAT. § 83-1, 114(1) (1976) (emphasis added). In *Allen,* the Supreme Court reviewed Montana's parole statute, which provides that “the board *shall* release on parole ... any person confined in the Montana state prison ... when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community.”MONT.CODE ANN. § 46-23-201 (1985) (emphasis added). In both *Greenholtz* and *Allen,* the Supreme Court found that the statute at issue created a liberty interest in parole release because it contained mandatory language-the use of the word “shall”-that created a presumption that if certain criteria were satisfied, the prisoner would be released. *See Greenholtz,* 442 U.S. at 12;*Allen,* 482 U.S. at 377-78. Similarly, in *Solomon,* we found that the federal parole statute, 18 U.S.C. § 4206(a), with its provision that if the statutory and regulatory guidelines are met the prisoner shall be released, gave the inmate an expectation of parole worthy of due process protection. *Solomon,* 676 F.2d at 285.

[6]“Whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis.”*Greenholtz,* 442 U.S. at 12. Thompson argues that the District of Columbia's parole system creates a legitimate expectation of parole release and therefore provides a liberty interest protected by the Due Process Clause. The District of Columbia's parole statute provides in relevant part:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Whenever it shall appear to the Board of Parole that there is reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence ... the Board *may* authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

D.C.CODE § 24-404(a) (2001) (emphasis added) (formerly D.C.CODE § 24-204(a)). Unlike the Nebraska, Montana, and federal parole statutes, the District of Columbia's parole statute does not contain mandatory language creating an expectancy of release that rises to the level of a constitutionally protected liberty interest. Indeed, the law is well established that the D.C. statutory scheme does not create any liberty interest in parole. (*See Blair-Bey v. Quick,* 151 F.3d 1036, 1047-48 (D.C.Cir.1998) (D.C. parole regulations contain non-mandatory language and do not create a liberty interest in parole.); *Ellis v. District of Columbia,* 84 F.3d 1413, 1420 (D.C.Cir.1996) (D.C. parole statute and regulations do not give any prisoners a liberty interest in parole.); *McRae v. Hyman,* 667 A.2d 1356, 1357 (D.C.1995) ("The District's parole scheme confers discretion to grant or deny parole and the scoring system creates no liberty interest overriding the exercise of that discretion.")). Because no liberty interest is at stake, the USPC did not violate the due process clause in denying Thompson's parole and extending his rehearing by 36 months.

***5** [7] Thompson also argues that the USPC's decision to rescind his parole date by at least 36 months constitutes exceptionally arbitrary conduct which in itself violates the due process clause. *See Blair-Bey,* 151 F.3d at 1048, n. 11 ("There is some authority for the proposition that exceptionally arbitrary governmental conduct may in itself violate the due process clause, whether or not a liberty or property interest is at stake."(*citing Burkett v. Love,* 89 F.3d 135, 139 (3d Cir.1996)). Here, the USPC's decision was not arbitrary. It appropriately denied parole and articulated a rational basis for ordering a rehearing regarding Thompson's parole in June of 2008. Specifically, the USPC explained that Thompson is a "more serious risk" and "poorer risk" than indicated by his SFS because of his threatening behavior towards his female co-workers and his persistent failures in probation and on parole. [FN4]

Because Thompson does not have a protectible liberty interest in parole and because the USPC's decision to deny Thompson parole and extend his rehearing 36 months was not arbitrary, Thompson's due process arguments fail.

Accordingly, the district court's decision to deny Thompson's petition for writ of habeas corpus is AFFIRMED.

FN1. In August of 1998, the USPC assumed the responsibility of making parole decisions for prisoners convicted of D.C.Code violations-such determinations are to be made according to the parole regulations of the District of Columbia. *See* National Capital Revitalization and Self-Government Improvement Act of 1997, Pub.L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (codified at D.C.CODE § 24-1231).

FN2. The second hearing examiner had more complete information concerning Thompson's prior convictions. Unlike the first examiner, the second examiner knew that Thompson had twelve prior convictions and six prior confinements of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

30 or more days.

FN3. The district court erroneously stated that the USPC had rescinded Thompson's parole by 16 months. In fact, the USPC had denied Thompson's parole and continued his case 36 months to a rehearing in June of 2008. The district court found that the USPC rationally based the length of Thompson's parole rescission on his previous convictions and past failures to comply with the rules of the institutions to which he was confined.

FN4. Under the Code of Federal Regulations, the USPC has the authority to render a decision above the guideline range if the "prisoner is deemed to be ... a poorer risk than indicated by the salient factor score [or] a more serious parole risk."*See*28 C.F.R. § 2.80(n)(2). The regulations specify that the offender is a poorer parole risk than indicated by the SFS because of "[u]nusually persistent failure under supervision" and "[u]nusually extensive prior record" and that the offender is a more serious risk because the "[c]urrent offense demonstrates ... criminal professionalism in the employment of violence or threats of violence...."*Id.*

C.A.7 (Ill.),2007.
Thompson v. Veach
--- F.3d ----, 2007 WL 2566029 (C.A.7 (Ill.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.